## IN RE OSCAR PATTEN, Insolvent.

### Sagadahoc. Opinion December 12, 1892.

*Insolvency. Trader. Books of Account. R. S., c. 70, § 46.*

Where an insolvent debtor purchased a stock of groceries and carried on a small grocery business for about a year, without keeping during that period any account of the money used for his living expenses, having himself and a wife to support, or any account of the money received for such goods as were sold for cash, estimated to amount daily to from four to ten dollars, he has not kept such sufficient or proper books as will entitle him to a discharge by an insolvent court; although all his other financial affairs were readily ascertainable from his papers and books.

ON EXCEPTIONS.

The decree in this court and to which the debtor took exceptions is as follows : "*First*, that the debtor was a merchant or trader ; *second*, that his business having begun and closed since statute 1885, c. 326, took effect, he was not required to keep a cash book ; *third*, that neither the debtor, nor his book-keeper, nor any creditor could by his books ascertain the condition of his affairs, and that hence he did not keep proper books of account. Decree of Court of Insolvency reversed, and discharge denied.

WM. WIRT VIRGIN, Justice S. J. C. Presiding."

The case is stated in the opinion.

*Barrett Potter*, for objecting creditor.

The requirement of the statute to keep proper books of account is absolute. *Jones* v. *Bank*, 79 Maine, 191. Intent of non-keeping immaterial. Such omission prevents a discharge, whether the intent was fraudulent or not. *In re Newman*, 2 B. R. 302 ; *In re Jorey & Sons, Ib.* 668.

It is not sufficient that a debtor employed a book-keeper whom he considered competent, and left the whole charge of the books to him. The law does not require traders to keep a book-keeper, but to keep books, and they are responsible to see that this is done. *In re Hammond & Coolidge*, 3 B. R. 273.

The law intends that a merchant's or trader's books and documents should be in such a condition as to show his business situation to his creditors as well as himself. By keeping such books

in a proper manner, the trader cannot but be aware of his standing, his property and effects, and of his liabilities, and whether his business is profitable or otherwise. On the other hand, his books should exhibit to his creditors his position so that when placed before them for investigation they may at once ascertain his standing and property and the result of his business, and whether everything has been fair and honest on his part. *In re Gay*, 2 B. R. 358; S. C. 1 Hask. 108; *In re Newman*, 2 B. R. 302; *In re Solomon*, 2 B. R. 285; *In re Keach*, 1 *Lowell*, 335; Bump's Bankruptcy, 705.

This is a most important provision, because it is that which is intended to provide the assignee representing the creditors with the means of tracing out all the dealings of the debtor, to ascertain what has become of his property, what are the causes of his failure, and whether he has dealt fairly and honestly with his creditors. However harshly the law may sometimes operate with some small traders, whose affairs seem hardly worthy of the trouble of recording, it is a most reasonable and salutary rule. Creditors may thus know the condition of a trader's business, and when one has been kept, a discharge will not be refused. *In re Gay*, 2 B. R. 358; S. C. 1 Hask. 108; *In re Littlefield*, 3 B. R. 57 S. C. 1 Lowell, 331.

Persons who buy on credit, and sell again in such wise as to be merchants or tradesmen, must see to it, in order to be in position when misfortune overtakes them to obtain the benefits of the bankrupt act, that they keep such books in relation to their business as will furnish an intelligible account to their creditors of the state and course of their business transactions, not leaving such account to be made up from memory or from sources other than such books. *In re Garrison*, 7 B. R. 287; S. C. 5 Ben. 430; Bump's Bank. 708. The omission of an entire book, or set of entries necessary to the understanding of the business, prevents a discharge. *In re White*, 2 B. R. 590.

Mr. Justice Grier of the U. S. Supreme Court, *In re Solomon*, 2 B. R. 94, commenting on the provisions of the bankrupt act, says: " It is the policy of this clause of the act, that after its passage, every merchant or tradesman should keep such

books of account, considering the business and condition of the debtor, as would enable any competent person to determine from the books the real condition of the debtor's affairs. Could any competent person, from the bank books, checks, and other papers kept, without any cash accounts of the receipts and expenditures, determine the real condition of the debtor's affairs? It seems to me that the question should be answered in the negative."

*In re Gay*, *supra*, Judge Fox says further: "The debtor kept a journal and ledger in which most of his sales on credit appear, but they do not exhibit, as I understand, his sales when made for cash or barter, nor does there anywhere appear in his book any entry of cash borrowed, or of sums paid, either for goods, or on other accounts." *In re Tolman*, 83 Maine, 353, PETERS, C. J., uses the following language: "The debtor nowhere enters in any book, in a single instance even, any purchase of milk, or money paid or settlements made therefor. . This important test of book-keeping fails. He has an account rendered by his brother for milk, but it is not carried upon any book. No one can ascertain from the insolvent's books the condition of his affairs. The law does not heed excuses for not keeping books, it requires them to be kept. Here there was a failure to comply with the law."

*Weston Thompson*, for debtor.

Statute should be liberally construed (*Opinion of the Justices*, 70 Maine, 569,) and so applied as to do justice and accomplish a great purpose of the insolvent law. Character and magnitude of the business and the known purposes of the law should be consulted. Uses of book-keeping and the common infirmities of men should have consideration. Debtor not required to keep books of account in any other character than that of a trader. What was due him for goods sold appears by charges and credits on his day-books and their groupings on his ledger; what he owed appears by his invoices, receipts, &c., preserved, and which answered the purposes of books. The last national bankruptcy law required "proper books of account," but this was never expounded by the Federal Supreme Court. It was held (*In re Reed*, 12 N. B.

R. 390) that if the book-keeping was in other respects sufficient and the debtor kept all his invoices, he kept proper books of account, though he kept no invoice book. "There is no positive rule of law requiring entries to be made daily or the books to be kept in any particular mode." *In re George & Proctor*, 1 Lowell, 409; *In re Hammond & Coolidge*, 3 B. R. 273; S. C. 1 Lowell, 381; *In re Schumpert*, 8 N. B. R. 415; *Witherell* v. *Swan*, 32 Maine, 247. A single sheet of paper; a bit of paper about two inches square; a shingle; a stick, notched by a nigger "to prove an account running through two or three years and consisting of a large number of items" have all been admitted as books. In *Hooper* v. *Taylor*, 39 Maine, 224, the court, pp. 228, 229, reviewed some of the cases of this kind and said in conclusion, "But these and other cases of a like character clearly show that it is not important what may be the construction or form of the book or material used, if it be capable of perpetuating a record of events and the charges thereon are fairly and honestly made. . . . Such books, thus kept, are competent evidence . . . as books of original entries."

A book of account, competent as evidence to a jury to prove the facts recorded, is a proper book of account. 2 Campb. 25, 27, 28 n. 29; 11 East, 244. That the books show no account of goods sold for cash and no account of family expenses seems to be nothing less than a demand for a cash book. That was struck out by Stat. 1885, c. 326, meaning thereby that a cash account should not be indispensable at all times. The complaint seems to be that more books were not kept; not that those kept contained errors.

PETERS, C. J. The insolvent, now in middle life, for many years followed the sea. On July 11, 1890, he purchased a grocery stock and fixtures, paying therefor in cash one thousand dollars. His grocery business was managed principally by a female clerk, who was also the book-keeper, whom he married in November, 1890. He devoted most of his time to business other than that of merchant or trader, but frequently sold goods in the store for cash, although having nothing to do with keeping the books. The business was conducted in this way for seven

months until February 12, 1891, on which day he sold the whole stock on hand and the fixtures for about eleven hundred and fifty dollars, which sum finally came into the hands of his assignee. On March 10, 1891, he filed his petition in insolvency.

The list of assets included five parcels of real estate, three of which were encumbered by mortgages, and debts due on account amounting to $131.95, the whole assets aggregating, with the amount received upon the sale of the stock of goods, the sum of $2179.44.

The schedule of creditors delivered to the messenger showed liabilities aggregating $4490.46, of which sum about $2500.00 consisted of unsecured claims that were either not contracted by the insolvent as a merchant or trader, or that did not come against his estate in the settlement. The insolvent was largely indebted, not however in the business of a trader, before he purchased the stock of groceries. His estate paid a dividend of twenty-five per cent out of the personal assets.

The debtor's book-keeper kept a daybook, and ledger corresponding with the daybook, containing accounts of all goods sold on credit and all payments made therefor. He also had a bank account showing deposits, from July 17, 1890, to February 7, 1891, of about one thousand dollars, and the checks upon which the money was drawn out from the bank were preserved and produced by him. No other formal books were kept. There was no cash book, and no cash account on any of the books. The books showed no account of any goods sold for cash. Such sales were estimated by the debtor as being nine or ten dollars per day, and by his wife as being from four to six dollars. There was no invoice book, but all receipts for purchases of merchandise were preserved. Merchandise was paid for, sometimes by checks and sometimes by cash at the store. The books show no account of the personal expenses of himself and wife or of any persons dependent upon him, and he and she both attribute his failure to the heavy expenses of the business and their living. They both aver their ignorance of his insolvent condition at the date of his selling the stock of goods.

The debtor's discharge was allowed by the court of insolvency, but on appeal was denied by this court below. We think the latter ruling must be sustained, if we adhere to previous adjudications in similar cases in our own State and elsewhere. See *In re Tolman* 82 Maine 353. How could the condition of the debtor's business as a trader be ascertained from any books or written evidence of his transactions, engaged, as he was, in other business at the same time, keeping no account of money coming in for cash sales or going out for every sort of expenses, receiving money, as he was daily doing with one hand and disbursing it with the other without knowledge by himself or his wife of the amounts so received and expended? It was not strange that neither he nor she was aware of his insolvency. How can we declare, as we would be glad to be able to do, that the debtor's business is exhibited upon his books with sufficient definiteness and certainty under the requirements of the law, to allow us to accede to his petition for a discharge?

*Exceptions overruled.*

VIRGIN, LIBBEY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.